Mr. Powers. Thank you, Rochelle. May it please the Court, I would like to begin, if I may, with a discussion of the validity issues relating to the 918 Pact. There are two issues on this appeal. The first is a question of claim construction, and the second is a question of what may be inferred via the doctrine of inherency to find anticipation. The ground for invalidation below was anticipation by a single reference, the Sandberg Reference. The Sandberg Reference, the portion relied upon, constituted exactly six sentences. It's a very sparse discussion, and most importantly, I think, for this appeal, the Sandberg Reference, as is evidenced by Bluarch's arguments on appeal, is really quite similar to the prior art described in Figure 1 of the 918 Patent itself, and in our view, is no more powerful than the prior art described in Figure 1 of the 918 Patent itself. Indeed, Bluarch argues on this appeal, as it did below, that the prior art described in the 918 Patent, in Figure 1, invalidates the 918 Patent itself on very much the same grounds as the Sandberg Reference relied upon below. It is our view that that argument reflects a misunderstanding of the 918 Patent, which should not be invalidated based on the prior art described in its own patent in Figure 1. The claim construction issue specifically is what is the proper construction of a file system control module. The argument from Bluarch, and ultimately the basis for invalidation based on Sandberg, was that that module may be any general purpose processor as long as that general purpose processor performs file control functions. In our view, that fundamentally misunderstands the purpose and essence of this invention. This invention describes, throughout its specification, repeatedly, as one of its fundamental tenets, the idea of taking away processing power for specific functions, taking that away from a general purpose processor, which has several overhead functions it has to perform, and distributing that functionality, that software processor functionality, to other places in the system, so that you have specialized modules, if you will, specialized modules that are not burdened by the overhead of running an entire operating system, which would be present in a general purpose processor, such as that present in Sandberg, such as that present in Figure 1 of the 918 patent hierarchy. That is the fundamental claim construction issue. The district court's claim construction, when they performed a markman process, of which there were two, did not construe this claim limitation. It construed the term module. The parties argued about what a module was, but not the composite term, file system control module. That was construed for the first time as part of the summary judgment process, and in that process, in our view, the district court erred. The specific issue then, there is no dispute that Sandberg is a general purpose processor, not the type of specialized processor described in the patent. It's a VAX 750. There is no debate about that fact. So the claim construction issue, presented to the court in this case, is a square root, and in our view, a fair reading of the specification does not permit a claim construction which holds that the file system control module may be any general purpose processor as long as it performs filing functions. So if, in effect, are you saying that in the claim, when the claim talks about the two specific modules, that those modules are restricted to performing only one function? No, Your Honor, we're not. In fact, as both sides pointed out, in the specialized modules in the preferred environment, those specialized modules may perform other functions, but they are specialized primarily to be performing the function described, either the network control functions or the file system control functions. The distinction that is drawn in the specification that is important for our purposes is not that it is 100% dedicated. In fact, the specification as both sides argue makes clear that's not true. The point of this invention is to take away the functions that are necessary for a file system away from the general purpose process which has all of the overhead of, for example, as the patent talks about, a Unix operating system. And the patent goes at great length to say that the Unix, that they picked the Unix system not because this invention is intended to operate, but because that was, at the time, one of the places where the greatest bottlenecks occurred. And in Column 2, it is expressly only exemplary. And it explains why they picked the Unix operating system as an example. But the concept of the invention, when you read the specification clearly, and I believe Column 2 is to that effect, Column 4, Column 8, Line 25, each of those makes clear that what the invention is about is taking away the primary functions, and there are several, of this type of a system, taking that away from the general operating system and distributing them so that the processors which perform those functions are not burdened with all the overhead associated with a normal operating system. And that does not mean it has to be 100% dedicated. Indeed, the specification is not so dedicated. It does mean, though, that you have one processor with its associated software that is specialized in one area. It may be doing other things as well. Another processor specialized in another area. But neither one burdened by all the overhead of the operating system. Well, I guess it's the last thing you mentioned that is the thing that's troubling me a little bit, is that neither one is burdened by any other overall operating functionality. It's not, I believe, Your Honor, that it's not burdened by other functionality. The point is that an overall operating system, such as Unix, has a great deal of overhead associated with it that isn't related to discrete bits of functionality that are necessary to run a particular implementation of a program underneath it. And the idea of this invention is to take out pieces of functionality away from that general overhead. It's not that those specialized processors may do nothing else. It is that they are not part of the main Unix operating system, Unix being the example here. And as I said, both parties recognized and stated in the briefs that even in the preferred embodiment, it is not 100 percent which is true. Let me direct you to one specific item that may or may not be a minor item and it was troubling me as I went through. Claim 8, a deep-ended claim, talks about the file system control module returns that specified retrieval data directly to said network control module. But the direct connection is also set forth in claim statement. It seemed to me that claim 8 didn't really add much in terms of relatively insignificant consequence. Is that right or am I glossing over something? If I understand Your Honor's question correctly, the direct connection in claim 8, you believe, is redundant of the direct connection in claim 7? It appears that way. The direct connection in claim 7 that is described is between the network control module and the file system control module. Correct. The direct connection in claim 8 is between the file system control module and the network system control module. Looks to me like it's pretty much the same. So my question is is it pretty much the same? Your argument in your briefs doesn't really emphasize that claim at all. It does not. Which seems to me consistent with the notion that the claim doesn't have any major significance. But I want to make sure that I'm not glossing over something. We believe the direct connection is present in both. We do not argue that claim 8 has any material in claim 7. All right. Thank you. Returning, if I may, to the question of validity in the 918 patent and Sandberg. Taking the core question of claim construction, the first place obviously under this Court's jurisprudence we look is the claims. And the claim doesn't merely say a processor or a general module. It describes the processor by its function. And you have a network control module, you have a file system control module. And so that if you're looking at the claims by themselves as a starting point, the starting point suggests a definition that is related to the function described in the claim itself. We do not go to the specification because the claims were written in a particular way to describe those modules  their function. And that is what we're talking about. You then, of course, go to the specification. The specification, as I've described, says several times that the point of this is to allocate those specialized functions away from the host so as to avoid burning them with the host's overhead. And the prior arc was expressly distinguished on this grounds. Column 3, column 7, elsewhere in the specification repeatedly discussing the prior arc, including figure 1 relied upon by BlueArc, as saying that's a general purpose processor, it's not specialized in the sense that we're talking about. So in our view, the specification makes that quite clear. Also, in the summary of the invention, it describes that separation from the host as being important. The words optimized, dedicated, specialized are used throughout the specification. Now, the primary concern by the district court, and at least stated in the basis for decision, appeared to be a perception that the portions of the specification to which I just referred were limited to the preferred embodiment, and not description of the invention as a whole. And on that we just respectfully disagree with Judge Patel. The discussions, for example, in the summary of the invention was not a discussion of a particular embodiment. The distinctions of the prior art to which I referred were not distinguishing merely the preferred embodiment, and the discussions of the importance of separating the process, specialized processing functions from the host are not discussions merely of the preferred embodiment. Those are discussions of what these inventors believe was important to part of their invention. And what in the specification leads you to that conclusion? Is there a language that suggests as much? The language that we're referring to, Your Honor, begins, of course, in the summary of the invention. And these are the portions that we quoted in the brief. But if you look, for example, at column four, there's a discussion of the portions of the operating systems at line thirty-five, each being, quote, optimized for  type of work to which it is dedicated. And optimized doesn't mean, of course, only doing that work. It means stripped down from the overall system, as the rest of that entire paragraph makes clear, to be primarily dedicated to those functions so that it is not limited to the particular examples        trying to do. We're trying to do that in a way that is not limited to the particular examples that are described. And the specification goes to  to say that in, for example, column two, where it points out at lines eleven through twenty-five that these are particular, that the embodiments chosen are particular embodiments for the Unix environment and that that Unix environment was chosen for a particular reason, but that the invention goes beyond that, and its idea is this specialized nature of the processors rather than having one overall processor that runs it all burdened by the operating system. But I think Your Honor's captured exactly what these inventors would say that their invention was. How would one of ordinary skill in the art process understand that the purpose of this invention is to take processing burden . Was there anything said by someone who was supposed to be a representative of someone's skill in the art at the trial? At the trial court? It was said that during summary judgment there were extensive declarations by both sides of experts, both of skill in the art. And Dr. Falasche said repeatedly that is in fact the purpose of this invention in his mind. And that was offered on summary judgment. Yes, Your Honor. So Sandberg wasn't cited by the examiner, is that right? I believe that's true, Your Honor. But you agree that Sandberg is the closest of the various references? I don't agree that Sandberg really  more than figure one of the patent, Your Honor. At its core we're really talking about six sentences of Sandberg, truly. When you look at what's cited by the district court, what's cited by Blue Arc in its motions, we're limited to six sentences trying to make this something other than what was just a standard Blue  standard rather priority. One sentence could anticipate or you're saying that the complexity is such that six sentences could not have enabled that which it's supposed to be disclosing? I'm saying that six sentences, I certainly agree that six sentences if they were very good sentences could anticipate. I don't think these sentences come close. And the reasons were pointed out at great great length by Dr. Falace who pointed out that there's and by the district court, the district court straightforwardly said there are many parts, many aspects of these claims that are not shown at all in Sandburg, for example, the communication path. And that's where we go to inherency. But the first question was the claim construction issue. On that issue, I think it's important to note that Blue Art does not dispute the portions that we cite. And of course indeed acknowledges the relevance of those portions of the specification to the question of claim construction. Blue Art's argument to this court is really a bit orthogonal to the portions that we raise about the specification. Its argument is that the claim uses the term comprising. And that term means that you can change by adding elements to the claim, which it's true that comprising is an open-ended claim, which permits you to add elements not present there. It does not permit you though, as the Spectrum case and other cases of this court make clear, it does not permit you to expand a limitation that is limited on its face or by the specification to make it broad. That specification limits what that particular claim limitation is, and you can't change that. And even the cases they cite, the Telecom case, the Genentech case, those cases say that what comprising lets you do is add elements to a system. Okay, Mr. Powers, let's hear from the other side. We'll save your rebuttal time. Thank you. Mr. Farrell. May it please the court, Brian Farrell on behalf of the defendant Blue Art Corporation. I'd like to talk about a couple of points that counsel Furnett appraised before I get into the claim construction argument. I think two points that are very important for the court to keep in mind. One, at the district court, network compliance never asked for construction of the term file system control module. Not only did they not ask for construction at Markman but they moved for summary judgment of invalidity at which point network compliance realized it needed to imbue these claims with further limitations in order to avoid invalidity. Second point regarding Sandberg. To clarify, Sandberg is a ten or so page article. I don't have the precise page limits but it is far more than six sentences. Russell Sandberg was one of the inventors of NFS, the network file system at Sun Microsystems and the article describes all the functionality of NFS. And indeed BLUARC relies upon much of that functionality in order to explain how the functional requirements of the claims are anticipated by the Sandberg reference. Now, with respect to the claim construction argument, file system control module was properly interpreted by the district court for several reasons. One, the claim itself does not include the limitations that network compliance asked the court to adopt. Two, the specification nowhere has the definition that network compliance should not be read where the patentee has chosen not to include them. Of course, the claims are not construed in the abstract, and if you read the specification fairly, don't you come away with a clear sense that this invention is not going to be implemented in the way that the district court had intended  be implemented. So, I guess the direct question is, why isn't Mr. Powers correct in all of his arguments that these claims properly cover the invention disclosed that is directed to these specific modules and not overall operating system? Two points to keep in mind. First, Your Honor, as I'm sure the Court is well aware, the patentee may choose to claim different aspects of the invention. Obviously, it does not need to claim in each and every claim all aspects or all benefits that it purports to describe in the specification. With that, we should give due respect to the language that the patentee has chosen to use in those claims and realize that the patentee may choose to omit certain benefits in some claims and claim them in others. Second, the file system control module is a term that is nowhere found in the specification. Not only is it nowhere found in the specification, but it is not even ever described in the specification as a unit. This is an important point. If the court has the  that we submitted, I can direct you to exhibit A2. This is an aid that we used in the district court. It is a color marked up version of the patent. It reads this  upon the embodiment. What you see is the network control module in blue, the mass storage device in brown, and the file system control module is not the file controller, which is somewhat confusing, but it necessarily must be at least these three components, the storage processor, the system memory, and the file controller. Why must it be that? Because the claim itself requires that the file system control module be connected to the mass storage device, that's the storage processor. It also requires that the file system control module satisfy file system requests and return specified retrieval data to the network control module. For that to happen in the embodiment, you require the use of  system memory, which serves as a parking lot, if you will, for data while the processors do their processing of the requests. The important thing  the storage processor is associated with this language that says any one of these components, namely the file controller or the storage processor, must be optimized. And indeed, the storage processor serves a function that is, it not only serves the file controller, it also serves the host, the host being in the embodiment, what is running the Unix operating system. The storage processor is satisfying the host's requests for data out of the Unix  system. I'm going to read that into this aggregate of components. I don't think that follows the Court's jurisprudence on claim construction. The other point I'd like to talk about is claims 19 and 20 of the 366 patent. Those claims, the claims are set up with an analogous structure. They call for a network, essentially two components, a network interface and a file server processor. It goes on to describe the functions of the file server processor is, A, dedicated and, B, satisfies essentially only NFS requests. That's the essence of what network appliance would have the Court read into these claims where such language is missing. I would like to say that the essence     purported novelty of these claims is that the essence of these claims is that the essence of these claims is not the file system control module where the language of the claims doesn't claim anything in particular but the network control module where the language of the claim itself claims a unique and novel processing on this network control module that is distinguished over the prior art. Namely, the language of the claim says that the network control module receives file system requests from the network and prepares file retrieval requests. Now, by simple grammar, those two things must be different. A file retrieval request is not the same as a file system request. And, as we explain, by necessity, in order to get to a request and change it from a file system request to a file retrieval request, one must process it at the application layer, the top layer of the traditional OSI stack of network communications. The court held that that was not required. The court said that any request     must be processed at the application layer. Now, the patent is clear that when it's talking about requests, it's talking about the application layer. When it's talking about the lower layers, it's   application layer. You see descriptions, for example, on column 5, there's a description about the processing at the Ethernet layer, column 5 lines 40 to 42, and there it's referring to packets. When it talks about requests, it's the application layer, and I believe the evidence is undisputed that to the extent there is a to the extent the court's claim construction on this term is corrected, such that preparing file retrieval request has to occur at the top layer, it's undisputed that BlueArk's file servers don't do that. BlueArk's file servers are much like, in fact, very close to the Exelam board that is disclosed in the Sandbrook prior arc. That is, BlueArk's file servers at what is accused to be the network control module processes only up to the UDP layer, just like the Exelam board, and the rest is processed elsewhere. Thus, a correction of the claim construction should result in a reversal of the finding of infringement of these claims. And with that, if there's no further questions, I'll reserve my time for rebuttal on  appeal. Any questions? Thank you, Mr. Farrell. Mr. Powers. Thank you, Your Honor. Counsel for BlueArk begins by arguing that we are not permitted to argue the construction of the file system control module because we did not proffer that construction at the district court in Markman. It is true that neither side requested a construction, as I said earlier, of the composite term file system control module. It is not true that we did not argue this below. In fact, we submitted the declaration of Dr. Falace at 5543 of the appendix, and specifically, I believe, paragraph 24 there, he's described specifically in opposition on summary judgment the position we are taking here. So it was definitely argued below. This issue was joined below. The second argument with regard to claim construction, I'll note that counsel does not come to grips before you with the issues on the specification that we brought. In our view, the specification ought to be the best guide to what this invention is. Instead, what counsel focuses on is claims 19 to 20 of a different patent, 366 patent, which is related, but not the same patent, and with different claims. And the argument being made to you is that if in those different claims with different language and different patent, we use the word patent, then we should look at the specification to determine what was intended. That is the argument we're making, and that is the argument that counsel does not come to grips with. I will address briefly the cross-appeal argument that       supports our cross-appeal argument on network control module. We lay out on page 6 of our reply brief  of excerpts from the specification, a comparison of network appliances support from the specification of their file system control module, and a comparison  file system control module interpretation versus our network control  interpretation. And you will see item by item where the novelty of the network control module is matched. Indeed, it succeeded in references in the specification to those of the file system control module. And just to talk about the one that Council for NetApp raised on column 4 in the summary of the invention, it cites a sentence referring to the processors being optimized for the particular type of work to which it is dedicated. And only about 10 lines earlier, it says the network controllers  connect to one or more networks and provide all protocol processing between the network layer data format and an internal file server format, etc. In other words, all protocol processing. Therefore, if the Court is to adopt the notion that these statements in the specification control the language in the claims, then surely Blue Arc's cross-appeal for the case is taken under submission. Thank